UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JESSIE McKINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-293-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, | ) | **AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff, Jessie McKinney, brought this action under 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner's decision to deny him disability insurance benefits. The record contains undisputed medical evidence that McKinney had difficulties in maintaining "pace." *See* 20 C.F.R. Pt. 404, subpt. P, App. 1, § 12.00.C.3 (explaining that "pace" refers to a claimant's ability to achieve "timely and appropriate completion of tasks commonly found in work settings"). Since the ALJ failed to address this evidence—both in his own findings and in the hypothetical question he asked the vocational expert—the Court grants the plaintiff's motion for judgment, R. 12, denies the Commissioner's motion for judgment, R. 13, and remands this matter.

## BACKGROUND

Jessie McKinney filed an application for disability insurance benefits on May 7, 2009. R. 10-1 at 15, 75 (Admin. Tr. at 13, 72 [hereafter Tr.]). He claimed that he is unable to work due to back, shoulder, knee, and neck pain. *Id.* at 76 (Tr. at 73), 360–61 (Tr. at 356–57).

McKinney is 49 years old, *id.* at 75 (Tr. at 72), has a sixth-grade education, and has worked as a security guard and a conveyor belt tender. *Id.* at 358–59 (Tr. at 354–55).

The Social Security Administration (SSA) initially denied McKinney's application and then denied it again after reconsideration. *Id.* at 59–61 (Tr. at 57–58), 63–66 (Tr. at 60–63). McKinney requested a hearing, *id.* at 62 (Tr. at 59), which an ALJ held on July 7, 2010. *Id.* at 349 (Tr. at 345). At the hearing, McKinney testified that he had not worked since 2004. *Id.* at 359 (Tr. at 355). He said that his "back . . . hurts all the time," his shoulders "hurt," his knees and feet "tingle real bad," and he often could not turn his neck. *Id.* at 360 (Tr. at 356). He characterized his back pain as "constant" and said that his shoulders felt like they had "sandpaper in there." *Id.* at 360–61 (Tr. at 356–57). He described his neck pain as "cracks and pops" and said his neck "gets so stiff" that he often has to move his entire body to turn his head. *Id.* at 362 (Tr. at 358). The ALJ asked him about his history of medical treatment, and McKinney reported that he was not currently on pain medication or receiving treatment for any of his alleged ailments. *Id.* at 360–62 (Tr. at 356–58), 368 (Tr. at 364). McKinney also testified about his home life. He lives with his wife, who is on disability, and his step-daughter. *Id.* at 356–58 (Tr. at 352–54). His wife handles the housework and helps him with tasks that require bending down, such as reaching lower drawers or washing his feet. *Id.* at 359 (Tr. at 355). McKinney's brother mows their lawn because yard work is usually too painful for McKinney. *Id.* at 364 (Tr. at 360).

The ALJ issued a decision on July 28, 2010, finding that McKinney is not disabled. *Id.* at 12–23 (Tr. at 10–21). In his decision, the ALJ followed the five-step evaluation outlined in 20 C.F.R. § 416.920. First, the ALJ found that McKinney had not engaged in

substantial gainful activity since the date of his application. *Id.* at 17 (Tr. at 15). Second, the he found that McKinney had multiple "severe impairments," including degenerative disk disease, depression, borderline intellectual functioning, and functional illiteracy. *Id.* at 17–19 (Tr. at 15–17). Third, the ALJ concluded that McKinney failed to offer "specific medical evidence" that any of his impairments met or medically equaled any recognized impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. R. 10-1 at 19–21 (Tr. at 17–19). The ALJ then determined that McKinney had the residual functional capacity to perform a full range of medium work. However, the ALJ qualified that finding. He narrowed the eligible jobs for McKinney to those involving medium work with: simple tasks or instructions, no literacy requirement, nonpublic settings, and only casual or infrequent contact with co-workers and supervisors. *Id.* at 21–22 (Tr. at 19–20). Fourth, the ALJ stated that McKinney could perform his former work as a conveyor belt tender. However, he deemed that job irrelevant because its earnings fell below the "substantial gainful activity level." *Id.* at 22 (Tr. at 20). So the ALJ proceeded to the fifth step, examining whether McKinney could successfully adjust to other work, and whether a sufficient number of suitable jobs were available. The ALJ determined that, even with his limitations, McKinney had numerous other work opportunities in the national economy. *Id.* at 23 (Tr. at 21).

The ALJ reached this conclusion in Step Five based on a vocational expert's now-disputed testimony given in response to his hypothetical questions at McKinney's administrative hearing. *Id.* at 22–23 (Tr. at 20–21). At the hearing, the ALJ interviewed Dr. James H. Miller, a vocational expert. *Id.* at 30, 368–73 (Tr. at 28, 364–69). Vocational experts are trained to determine what jobs a person can perform with the claimant's

3

limitations and how many of those jobs are currently available. 3 Social Security Law & Practice § 43:140. An ALJ's primary means of conducting Step Five analysis is asking a vocational expert a set of hypothetical questions designed to gauge how many jobs are available to a person with the claimant's abilities. *See* Frank S. Bloch, Bloch on Social Security § 5:10. The expert's answers can provide substantial evidence that the claimant is able to successfully adjust to work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1566(e). That evidence then allows an ALJ to determine that the person is not "disabled." *See id.* § 404.1566(b).

After having the expert assume a person with McKinney's age, education, and work experience, the ALJ placed four restrictions on his hypothetical questions about what jobs McKinney could perform. First, the ALJ restricted the expert to considering jobs that only required "medium level exertion." *Id.* at 370 (Tr. at 366). Second, he asked the expert to assume that the hypothetical job-seeker was "limited to simple tasks or instructions in settings that don't require literacy." *Id.* (Tr. at 366). Third, the ALJ had the expert limit the available jobs to "non-public work settings with only casual or infrequent co-worker or supervisor contact." *Id.* at 371 (Tr. at 367) Finally, he had the expert assume that the job-seeker was only "fair" in "dealing with work stress, functioning independently, dealing with the public, using judgment, behaving in an emotionally stable manner and relating predictably in social situations." *Id.* (Tr. at 367).

In response, the vocational expert testified that a hypothetical person with those restrictions could find work as a janitor, a dishwasher, or a food-packer. *Id.* at 370–71 (Tr. at 366–67). Despite the fact that the medical opinions in the record indicated that McKinney

had "pace" limitations, *see* Section I.A.1., *infra* at 8-9 (citing R. 10-1 at 320, 323–24, 264, 284, 299 (Tr. at 316, 319–20, 260, 280, 295)), the ALJ made no mention of any pace limitation when questioning the vocational expert.

In fact, the ALJ expressly eliminated any doubt that the answers the vocational expert gave did not apply to someone with sub-standard pace. After placing the four restrictions on the expert's answer, the ALJ specifically addressed the "concentration, persistence, or pace" issue.

> Q    But all this assumes a person capable of sustaining concentration, persistence and pace on a reliable basis, eight hours a day, five days a week; would that be correct?
> A    Yes, sir.
> Q    And may I infer if a person is not capable of doing that, they couldn't do these or any other sorts of jobs?
> A    Yes, sir, that would be correct.

R. 10-1 at 372 (Tr. at 368). Based on this exchange and the vocational expert's answers to his hypothetical questions, the ALJ determined that McKinney had sufficient work opportunities and therefore was "not disabled." *See id.* at 22–34 (Tr. at 20–21).

## DISCUSSION

Under the Social Security Act, the Court conducts a limited review of the SSA's decision. 42 U.S.C. § 405(g). The Court may only determine whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. *Id.*; *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (articulating the same standard for judicial review by the court of appeals). Substantial evidence means "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted). It

5

includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In assessing the evidence and the ALJ's decision, the Court cannot "try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)).

McKinney offers three reasons for reversing the ALJ's decision. First, he claims that the ALJ's hypothetical questions to the vocational expert omitted essential facts and those omissions rendered the vocational expert's answers inapplicable to his case. From this, he concludes that the ALJ's decision—which relied heavily on the vocational expert's testimony—was not based on substantial evidence. R. 12-1 at 12–13. Second, he faults the vocational expert for failing to cite the Dictionary of Occupational Titles (DOT) numbers of the available jobs that McKinney could perform. He claims that this failure undermined the ALJ's finding and violated McKinney's right to cross examination at the hearing. *Id.* at 13–14. Finally, he generally asserts that the ALJ's determination that he is not disabled was not supported by substantial evidence. *Id.* at 14–15. Only the first of these concerns warrants a remand.

## I. The ALJ's Hypothetical Questions

McKinney asserts that the ALJ's hypothetical questions to the vocational expert, R. 10-1 at 370–72 (Tr. 366–68), erroneously omitted "some provision for quotas" to account for McKinney's deficiencies in pace. R. 12-1 at 13. ALJs may find substantial evidence to support their decisions by asking "hypothetical questions to a vocational expert." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citing *Hardaway v.*

*Sec'y of Health & Human Servs.*, 823 F.2d 922, 927–28 (6th Cir. 1987)). However, a hypothetical question can qualify as substantial evidence only if it "accurately portrays [the plaintiff's] individual physical and mental impairments." *Varley v. Sec'y Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987) (quoting *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir. 1984)). Because the ALJ failed to account for undisputed medical evidence that McKinney had deficiencies in "pace," his hypothetical questions could not yield substantial evidence.

### A. Uncontradicted Evidence Showed McKinney Had Pace Limitations

The Court's review of the ALJ's decision is complicated by the fact that the ALJ failed to directly address McKinney's "pace" in his findings of fact. The record contained evidence of McKinney's difficulties with "pace" that the ALJ's findings of fact had to address. *See* Section I.A.1., *infra* at 8-9. But the ALJ's findings did not squarely address this evidence. As explained below, two readings of the ALJ's findings are possible. *See* Section I.A.2, *infra* at 9-12. Under the first reading, the ALJ's findings totally ignored the medical evidence of McKinney's deficiencies in "pace." Under the second reading, the ALJ's findings implicitly incorporated the medical evidence of McKinney's limited pace into his finding regarding the "concentration, persistence, or pace" criteria (collectively, the "paragraph B factors"). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.C. While that ambiguity complicates the Court's analysis, it does not affect the outcome. Under either reading, the ALJ still had to incorporate pace restrictions into his hypothetical questions in order for the vocational expert's answers to count as substantial evidence.

7

### *1. The ALJ Could Not Ignore Evidence of McKinney's Deficiencies in Pace.*

Both of the medical opinions in the record classified McKinney as having limitations in the pace that he could perform work. Dr. Robert Spangler, the licensed psychologist who examined McKinney, repeatedly noted McKinney's deficiencies. He described McKinney as having a "slow retrieval process," being "slow" in performing diagnostic tasks, having an objectively "inadequate" pace, and having a "slow pace." R. 10-1 at 320 (Tr. at 316), 323–24 (Tr. at 319–20). Dr. Spangler reported this slow pace in both his narrative account of the examination as well as his diagnostic impression using the multi-axial system from the Diagnostic and Statistical Manual for Mental Disorders (DSM). *Id*. In Axis II of his assessment—the portion of the DSM multi-axial assessment identifying developmental and personality disorders—he specifically assessed McKinney as having "Slow Pace." *Id.* at 323; *see also* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27–34 (4th ed. 2000) (summarizing the multiaxial assessment system). Similarly, Dr. Jeanne Bennett, a psychologist and the government's consultative expert, classified McKinney as having a "mild" limitation in maintaining concentration, persistence, or pace. R.10-1 at 284, 299 (Tr. at 280, 295). And because Dr. Bennett's assessment expressly deferred to Dr. Spangler's Axis II assessment, there was no evidence in the record disputing Dr. Spangler's opinion that McKinney had limitations under the "pace" criterion. *Compare id.* at 264 (Tr. at 260) (reporting Axis II assessment as "Deferred"), *with id.* at 324 (Tr. at 320) (reporting "Slow Pace" under Axis II assessment of diagnostic impression).

Spangler's assessment provided evidence that the ALJ could not ignore in formulating his hypothetical questions. An ALJ's questions must include impairments that

8

"are medically undisputed and could seriously affect [the plaintiff's] ability to engage in alternative employment." *Podedworny*, 745 F.2d at 218; *see also* 20 C.F.R. § 404.1527(b) (requiring an ALJ to consider all medical opinions with the rest of the relevant evidence). This is true even where the deficiencies are only "moderate, mild, or even slight" because those limitations could well produce a different answer to a hypothetical question than the vocational expert might have otherwise given. *See, e.g., Elkin v. Astrue*, No. 7:09-CV-87-JBC, 2010 WL 1333434, at *4 (E.D. Ky. Mar. 30, 2010) (internal quotation marks omitted) (holding that ALJ's failure to include the moderate limitations in social functioning identified in a doctor's opinion made the ALJ's hypothetical question fatally incomplete); *Surma v. Comm'r of Soc. Sec.*, No. 1:09CV1513, 2010 WL 3001908, at *5 (N.D. Ohio July 29, 2010) (holding that ALJ's failure to include "mild to moderate limitations" in pace indicated in doctor's opinion rendered hypothetical question fatally incomplete). And deficiencies in "pace" are certainly a limitation that can alter a vocational expert's answers to hypothetical questions. *See, e.g., Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (holding that an ALJ erred by failing to incorporate "speed- and pace-based restrictions" into hypothetical questions). Therefore, the ALJ had to address the evidence of McKinney's deficiencies in pace.

### 2. *Under Any Reading of the ALJ's Findings of Fact, Pace Restrictions Should Have Been Included in the Hypothetical Questions.*

Two readings of the ALJ's findings of fact are possible. He either did not address McKinney's deficiencies in pace or he implicitly incorporated the evidence by stating in his findings of fact that McKinney's "mental impairments had resulted in mild difficulties in maintaining concentration, persistence or pace." R. 10-1 at 20 (Tr. at 18). While a

9

reviewing court should not "speculate as to whether the A.L.J. conducted the proper analysis," the Court need not speculate here. *Nash v. Sec'y of Health & Human Servs.*, 59 F.3d 171, 1995 WL 363381, at *2 (6th Cir. 1995). Under either potential reading, McKinney's deficiencies in pace are a limitation that the ALJ should have incorporated into his hypothetical questions.

First, the ALJ's findings of fact can be read as disregarding the medical evidence of deficiencies in "pace." This reading follows from the failure of the ALJ's findings to directly address "pace" as an individual criterion. To be sure, the ALJ did conclude that McKinney's "mental impairments" caused "mild difficulties in maintaining concentration, persistence or pace." R. 10-1 at 20 (Tr. at 18). But while that conclusory statement contained all three paragraph B factors, the actual analysis supporting the statement's conclusion did not. The ALJ's findings applied evidence from the record to the "concentration" criterion but ignored the "persistence" and "pace" criteria.

A close reading of the ALJ's findings reveals as much. The ALJ determined that "the record contains no evidence that [McKinney's] *concentration* skills do not allow for the completion of simple, one and two-step instructions." *Id.* (Tr. at 18) (emphasis added). And the ALJ pointed out that his determination was "confirmed by both consultative psychological examiners." *Id.* The ALJ further bolstered his finding by identifying instances where McKinney had "demonstrated the ability, at least, to successfully perform simple, routine, one to two step tasks." *Id.* He cited McKinney's performance in his administrative proceedings, and the fact that McKinney never repeated a grade or took special education classes. *Id.* While the ALJ did not explicitly tie this evidence to the


"persistence" criterion, he did not have to. Dr. Spangler reported that McKinney was "appropriately persistent on the tasks" in his diagnostic session. *Id.* at 320 (Tr. at 316). And there is no other finding in either Dr. Spangler or Dr. Bennett's report to contradict that specific assessment. Since the ALJ did not specifically reject this evidence or make his own determination as to "persistence," he did not need to account for a "persistence" limitation.

By contrast, the critical omission in the ALJ's finding is his failure to address Dr. Spangler's specific diagnosis of "pace" limitations. *See id.* at 324 (Tr. at 320). The ALJ then compounded that oversight by asserting that his "residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis" without addressing "pace." *Id.* at 21 (Tr. at 19). The ALJ was not free to simply ignore Dr. Spangler's opinion. *See* 20 C.F.R. § 404.1527(b). And with no evidence contradicting Dr. Spangler's assessment and no finding by the ALJ that it was not credible, the ALJ's hypothetical questions had to incorporate his assessment to count as substantial evidence. *See Podedworny*, 745 F.2d at 218 (holding that an ALJ must incorporate impairments that "are medically undisputed and could seriously affect [the plaintiff's] ability to engage in alternative employment"); *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) ("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.").

Second, the ALJ's findings could be read as implicitly incorporating Dr. Spangler's diagnosis into his general conclusion that McKinney had "mild difficulties in maintaining concentration, persistence or pace." R. 10-1 at 20 (Tr. at 18). But even if that is the case,

11

then the ALJ certainly should have explicitly incorporated "pace" restrictions into his hypothetical questions. The Sixth Circuit has squarely held that an ALJ's hypothetical questions must incorporate all "limitations accepted as credible." *Casey*, 987 F.2d at 1235 (citing *Hardaway*, 823 F.2d at 927–28).

Thus, both potential readings of the ALJ's findings of fact require the ALJ's hypothetical questions to include pace restrictions. Either the uncontroverted medical evidence or the ALJ's own finding made the pace restrictions necessary to his hypothetical questions.

### B. The ALJ's Failure to Incorporate Pace Restrictions Means That His Decision Lacked "Substantial Evidence."

The ALJ's hypothetical questions to the vocational expert did more than simply fail to mention McKinney's "pace" limitations. They expressly assumed that McKinney could work at a normal pace. *See supra* at 4-5 (citing R. 10-1 at 370–72 (Tr. at 366–68)).

Nothing in the ALJ's questioning compensates for his oversight. The Commissioner asserts that the ALJ's "simple tasks/instructions" limitation accounted for all of McKinney's limitations. *See* R. 13 at 9. But it is well established that restrictions on the types of tasks that a claimant can perform do not account for how quickly a claimant can perform those tasks. *See Ealy*, 594 F.3d at 516 (holding that hypothetical questions restriction to "simple, repetitive tasks and instructions in non-public work settings" wrongly "omitted [claimant's] speed- and pace-based restrictions"); *Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009) (limiting hypothetical question's "simple, routine tasks" restriction did not account for claimant's moderate difficulties in maintaining concentration, persistence, and pace); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (holding that a hypothetical

question's simple, one-to-two-step tasks restriction did not account for deficiencies in concentration, persistence, or pace); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996) (limiting hypothetical to simple jobs does not account for moderate deficiencies in concentration, persistence, or pace). Moreover, here there was no attempt to implicitly "incorporate" McKinney's pace limitations into the hypothetical question. *See Smith v. Halter*, 307 F.3d 377, 379–80 (6th Cir. 2001). To the contrary—the ALJ explicitly excluded the possibility that his hypothetical questions accounted for anything but normal "pace." *See* R. 10-1 at 372 (Tr. at 368).

The logic behind requiring a separate "pace" restriction is simple. A claimant's ability to maintain concentration throughout a task says nothing about his or her ability to complete that task quickly. So the simplicity or comprehensibility of a task does not guarantee that a claimant who works slowly will meet the productivity level that employers would require. *See, e.g., Ramirez*, 372 F.3d at 554; *Cheeks v. Comm'r of Soc. Sec.*, 690 F. Supp. 2d 592, 602-03 (E.D. Mich. 2009). This is especially true for McKinney because at least one of the jobs that the vocational expert cited, hand-packing jobs, R. 10-1 at 371 (Tr. at 368), is a quota-driven job where pace is especially critical. *See Cheeks*, 690 F. Supp. 2d at 602 (finding pacing limitations "particularly critical" where the jobs the vocational expert cites are "quota-driven positions" such as "hand packer"). The other two jobs the vocational expert cited may arguably accommodate pacing limitations. *Compare* R. 10-1 at 370–71 (Tr. at 366–67) (citing dishwasher and janitor as the other two potential jobs for McKinney), *with Swartz v. Barnhart*, 188 F. App'x 361, 366 (6th Cir. 2006) (describing janitor as a job with "[n]o hourly quotas"). However, the vocational expert explicitly confirmed the ALJ's

13

inference that a person incapable of "sustaining . . . pace on a reliable basis . . . couldn't do" the jobs that the vocational expert cited. R. 10-1 at 372 (Tr. at 368).

The Court "cannot assume that the vocational expert would have answered in a similar manner had the ALJ instructed her properly." *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) (internal quotation marks and brackets omitted) (quoting *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir.1985)). And here, the vocational expert's direct statement that his answers would not apply to someone with limited pace eliminates even the possibility of such an assumption. Thus, the expert's answers do not count as substantial evidence supporting the ALJ's decision because they explicitly rested on an inaccurate picture of McKinney's limitations. *See Varley*, 820 F.2d at 779. Since the ALJ's Step Five determination rested solely on the vocational expert's testimony, *see* R. 12-1 at 22–23, that determination is not based on substantial evidence.

Finally, the Commissioner's arguments in defense of the ALJ's decision do not justify the ALJ's error. The Commissioner asserts that McKinney has "failed to show the ALJ's [residual functional capacity determination] should have any additional limitations, including provisions for quotas." R. 13 at 9. But the Commissioner fails to point out where the ALJ addressed McKinney's "pace" difficulties. Further, the cases cited by the Commissioner do not apply here. All of those decisions upheld the ALJ's decision by citing obvious flaws in the plaintiff's medical evidence. Here, the Commissioner cannot point to an obvious shortcoming in Dr. Spangler's testimony or any contradictory evidence in the record. Dr. Spangler's assessment was not unexplained and unsupported by medical or clinical findings; nor did his evaluation occur after the ALJ's hearing. *See* R. 13 at 9 (citing *Foster v. Halter*,

279 F.3d 348, 356–57 (6th Cir. 2001)). His assessment was also not a bare legal conclusion. *Id.* (citing *Casey*, 987 F.2d at 1235). And Dr. Spangler's assessment was based on his own diagnostic testing. It was not a "one-page letter" unsupported by the "results of his evaluation, testing, or treatment" and contradicted by other medical testimony in the record. *Id.* (citing *Varley*, 820 F.2d at 779–80). Simply put, the Commissioner offers no justification for why the ALJ was free to disregard Dr. Spangler's assessment.

## II. McKinney's Remaining Arguments

McKinney presses two other arguments. He claims that the vocational expert's failure to cite specific DOT numbers undermined the ALJ's determination and violated his cross examination rights at the hearing. R. 12-1 at 13–14. He also broadly asserts that the ALJ's decision was not based on substantial evidence. R. 12-1 at 14. The Court will not rule on these arguments because McKinney fails to cite support in the record for either and because neither argument could be a basis for reversal anyway.

McKinney fails to cite any pages in the record that support either argument. *See* R. 12-1 at 13–15. The Court's Standing Order expressly instructed the parties to "provide the Court with specific page citations to the administrative record to support their arguments." R. 11 at 3, ¶(3)(c). And the Order expressly admonished them that "[t]he Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments." R. 11 at 3 ¶(3)(c) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 491 (6th Cir. 2006)). McKinney's failure to follow this instruction invites the Court to exceed the proper bounds of judicial review. The Court declines that invitation.

What's more, even if McKinney had provided proper citations to supporting evidence, neither argument could justify reversing the ALJ's decision in this case. Vocational experts are not required to cite DOT numbers in answering an ALJ's hypothetical questions. *See, e.g.*, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010) (explaining that the vocational expert's testimony is not required to take one particular form); *Smith v. Astrue*, No. 1:10CV1368, 2011 WL 4833120, at *13 (N.D. Ohio Oct. 12, 2011) (holding, consistent with numerous other district courts, that that a vocational expert "is not required to provide reference numbers for the jobs that he identifies" (citations omitted)). And McKinney waived any right to cross examination that he otherwise might have had. As the Commissioner points out, McKinney's attorney had the opportunity to cross-examine the vocational expert on the DOT numbers but declined to do so. *See* R. 13 at 10; *see also* R. 10-1 at 372–73. McKinney thus waived his right to cross-examination by failing to object to the vocational expert's testimony or even attempting to cross-examine him on the issue. *See Passmore v. Astrue*, 533 F.3d 658, 663 (8th Cir. 2008) (failure to object waives right to cross examination at hearing); *see also Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir. 2000) (refusing to allow claimants to "to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing").

Similarly, citations to the record would not change the outcome for McKinney's general claim that the ALJ's decision was not based on substantial evidence. The Court has already determined that the ALJ's Step Five determination was not based on substantial

evidence. Therefore, the question of whether the ALJ's decision was based on substantial evidence is moot for now. Of course, the ALJ will have the opportunity on remand to rectify his error. And his new decision will be subject to the substantial evidence requirement.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1) The Plaintiff's motion for summary judgment, R. 12, is **GRANTED**.

(2) The Commissioner's motion for summary judgment, R. 13, is **DENIED**.

(3) The administrative decision of the Commissioner is **REVERSED** and this action is **REMANDED** for further proceedings consistent with this Opinion.

(4) The Court will enter a separate Judgment.

(5) The Clerk shall **STRIKE** this case from the Court's active docket.

This the 5th day of July, 2012.



Signed By:
*Amul R. Thapar*
United States District Judge